JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Gregory Chambers appeals his conviction after a jury trial in the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} Chambers was charged in a two-count indictment; both counts charged receiving stolen property. One count involved a motor vehicle, and the other count involved a credit card. The case proceeded to jury trial.
 {¶ 3} At trial, the testimony revealed that the Cleveland Heights Police Department responded to the residence of Sandra Brown on a complaint of an unwanted guest on her porch, harassing her. The police were informed by dispatch that the unwanted guest was Brown's boyfriend, and were given a description. When the police arrived on the scene, Brown was there, but Chambers was not there. After speaking with Brown, the police toured the area and located Chambers walking on the next street over. He matched the description given by dispatch, except that he was not wearing a black jacket.
 {¶ 4} Chambers was returned to the scene, where he was identified by Brown and then placed into custody by the police for misdemeanor trespass. The officers testified that based on information relayed to them by Brown, they checked the van in her driveway. The van's column was peeled, and a black jacket was found in it. After a pat-down search of Chambers, a credit card was recovered from his pocket.
 {¶ 5} Brown failed to appear for trial and did not testify. In addition, Chambers' mother, the owner of the credit card, passed away before trial.
 {¶ 6} At the conclusion of the state's case, the trial court granted Chambers' motion for Rule 29 as to count two of the indictment. The remaining count went to the jury. The jury found Chambers guilty of receiving stolen property motor vehicle. Chambers was sentenced to twelve months in prison.
 {¶ 7} Chambers appeals, asserting four assignments of error for our review. His first assignment of error states as follows:
 {¶ 8} "Mr. Chambers' right to confrontation of witnesses was repeatedly violated when the police officers were permitted to relay to the jury statements made by a non-testifying witness."
 {¶ 9} Under this assignment of error, Chambers argues that several statements made by Brown were hearsay and were erroneously admitted at trial through the testimony of two police officers and a detective. Chambers argues that he was denied the opportunity to cross-examine Brown because she failed to appear at trial and, further, the detective and two officers lacked the firsthand knowledge necessary to testify.
 {¶ 10} The trial court has broad discretion in the admission or exclusion of evidence. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of syllabus. Absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. State v. Martin
(1985), 19 Ohio St.3d 122, 129.
 {¶ 11} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless the evidence meets one of the recognized exceptions to the hearsay rule. Evid.R. 802. When testimonial hearsay is at issue, however, the Sixth Amendment demands unavailability and a prior opportunity for cross-examination. Washington v. Crawford
(2004), 541 U.S. 36, 68. When nontestimonial hearsay is at issue, such statements are exempted from Confrontation Clause scrutiny and the rules of evidence apply. Id.
 {¶ 12} In State v. Thomas (1980), 61 Ohio St.2d 223, 232, the Supreme Court of Ohio stated that "extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. When the testimony is offered to explain the subsequent investigative or other activities of the witnesses and not offered to prove the truth of the matter asserted, the testimony is admissible." Id.
 {¶ 13} Chambers points out eight instances where the detective and the two officers testified as to what Brown said. Chambers paraphrases the testimony in his brief, stating that "[o]ver objection, and without the benefit of firsthand knowledge, the police officers at trial testified to the following:
"1. That the suspect arrived at Ms. Brown's home in the stolen van parked in her driveway. Tr. at 33.
"2. That the suspect was wearing dark pants and a black jacket when he was on the complainant's front porch, and that Mr. Chambers matched the description provided by the complaining witness. Tr. at 14, 22, 32, 34.
"3. That the suspect was calling Ms. Brown from a cellular phone and knocking on the door before police arrived. Tr. at 30.
"4. That the police had on several occasions previously responded to Ms. Brown's address and seen Mr. Chambers there. Tr. at 32.
"5. That Mr. Chambers and Ms. Brown were boyfriend and girlfriend. Tr. at 12, 15-16, 30.
"6. That the van in Ms. Brown's driveway did not belong to Ms. Brown. Tr. at 16-17.
"7. That Ms. Brown did not want the van in the driveway and asked for it to be towed. [Tr. not cited].
"8. That Ms. Brown identified a black jacket found in the van as belonging to Mr. Chambers. Tr. at 23."
 {¶ 14} Chambers argues that each statement attempted to link Mr. Chambers to Sandra Brown's home and the stolen van. Chambers claims that without these statements, the state could not prove that Chambers "received, retained, or disposed" of the van in question. All of the statements, Chambers insists, were admitted over objection, and their admission violated his right to confrontation.
 {¶ 15} We note that statement number one was objected to by Chambers and the court sustained the objection. Statement number four was based on firsthand knowledge of Officer Porter and not offered to prove the truth of the matter asserted. Statement seven was not found in the trial transcript.
 {¶ 16} As to statements two, three, five, and six, these statements were offered to explain the subsequent investigative actions of the officers on the scene; they were not offered to prove the truth of the matter asserted. Furthermore, these statements were nontestimonial because they were made in the course of police interrogation, via the 911 operator, under circumstances objectively indicating that the primary purpose of the interrogation, by the 911 operator, was to enable police assistance to meet an ongoing emergency. Davis v. Washington
(2006), 126 S.Ct. 2266, paragraph one of the syllabus.
 {¶ 17} In addition, the jury was given sufficient instructions to consider that testimony only for the purposes of determining why the officers took certain actions. The court instructed the jury as follows:
"You heard testimony that was not based on firsthand knowledge of the person testifying before you. You may not use such testimony to prove the truth of the third party's statements. You can only use such testimony as an explanation for what the testifying witness later did.
"For instance, if Joe testifies that a third party told him that a building is on fire, and as a result Joe fled the building, you may not use Joe's testimony as evidence there was a fire, you may only use that evidence to explain why Joe fled the building."
 {¶ 18} The jury is presumed to follow the instructions given to it by the trial judge. State v. Ahmed, 103 Ohio St.3d 27,51, 2004-Ohio-4190. We find, therefore, that the trial court did not abuse its discretion by allowing these statements to be considered as evidence for the limited purpose outlined above.
 {¶ 19} Statement number eight poses a different problem. This statement was ultimately admitted into evidence in the form of a question by Chambers' counsel on cross-examination. When the state asked about the jacket, the court sustained the objection. However, Chambers' counsel on cross-examination asked the following:
"Q. All right. Now, your information, okay, that there is a black jacket belonging to my client in the van, that is also based one hundred percent on what other people told you, right?
"A. Ms. Brown, yes."
 {¶ 20} Indeed, it has long been held that a defendant who induces an error at trial cannot take advantage of the error on appeal. State v. Swanson (1967), 9 Ohio App.2d 60, 69-70. Therefore, any error in admitting this testimony was invited error, since the defense first elicited the testimony. SeeAhmed, 103 Ohio St.3d at 39.
 {¶ 21} Nevertheless, this statement was testimonial because it was made in response to police interrogation after the emergency had subsided. Davis, 126 S.Ct. at paragraph three of the syllabus. Furthermore, a review of the record reveals that the statement was needed to tie Chambers to the stolen van; therefore, it must be used for the truth of the matter asserted. Ordinarily, since the statement is hearsay, it was inadmissible unless Brown testified or unless she was deemed unavailable and Chambers had a prior opportunity to cross-examine her. SeeWashington v. Crawford (2004), 541 U.S. 36. When the prosecution offers hearsay evidence against the accused, it prompts the court to question whether the admission of that evidence would violate the Confrontation Clause. State v.Allen, Cuyahoga App. No. 82556, 2004-Ohio-3111. The focus is on "testimonial" statements, which include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, supra. Had the state put forth this testimony, it would be inadmissible under Crawford andDavis; however, it was the defense that elicited this testimony. "One who has made the first error cannot avail himself of error which is caused thereby and which is calculated only to offset it; a party cannot complain of his opponent's argument to the jury, where it amounts only to a reply in kind to matters introduced in his own argument." Swanson, supra. Therefore, the trial court did not err.
 {¶ 22} Accordingly, Chambers' first assignment of error is overruled.
 {¶ 23} Chambers' second assignment of error states as follows:
 {¶ 24} "Mr. Chambers' conviction is not supported by sufficient evidence."
 {¶ 25} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented; whether the state has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390, 1997-Ohio-52 (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a conviction is a question of law. Id. at 386. The relevant inquiry in a claim of insufficiency is "`whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'" State v. Leonard,104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Sufficiency of evidence is a more rigorous standard than manifest weight and, if successfully challenged, results in the acquittal of appellant on that charge. State v. Jonas, Athens App. No. 99CA38, 2001-Ohio-2497.
 {¶ 26} Chambers argues that the state failed to present any evidence that demonstrated that Chambers "received, retained, or disposed" of the motor vehicle. Chambers claims that the only evidence presented was inadmissible hearsay (referring to the eight statements in his first assignment of error) and therefore the evidence is not sufficient to sustain a conviction.
 {¶ 27} The record reveals that the evidence presented at trial that tied Chambers to the stolen van was the statements made by Brown to the police officers, as well as the fact that Chambers was found in the area without a jacket in the middle of January and a jacket was found in the van. As stated previously, most of these statements could be used only to explain the subsequent investigative actions of the police officer and not to prove the truth of the matter asserted. Nevertheless, there was testimony elicited by defense counsel regarding the fact that Chambers was wearing a black jacket on the night in question and that Brown identified the black jacket found in the van as belonging to Chambers. When viewing the evidence in a light most favorable to the state, this testimony was sufficient to establish that Chambers "received, retained, or disposed" of the stolen vehicle in this case.
 {¶ 28} Accordingly, Chambers' second assignment of error is overruled.
 {¶ 29} Chambers' third assignment of error states as follows:
 {¶ 30} "The trial court erred in not properly instructing the jurors as to the essential elements and the definition of "received, retained, or disposed."
 {¶ 31} Chambers argues that the jury instructions were incomplete and inaccurate because the terms "receive, retain, and dispose" were not defined. Although Chambers argues that he objected to the jury instructions at side bar, the objection was not stated for the record. Chambers' failure to object to the jury instructions waives all but plain error. State v.Underwood (1983), 3 Ohio St.3d 12, syllabus. Plain error "should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice." Id. at 14. Plain error exists only where it is clear that the verdict would have been otherwise but for the error. State v. Long (1978),53 Ohio St.2d 91.
 {¶ 32} The trial court defined all the essential elements of receiving stolen property and followed the Ohio Jury Instructions exactly. Chambers does not explain, and we fail to see, how defining "receive, retain, or dispose" would have changed the verdict in this case. All three words are relatively self-explanatory. Furthermore, the jury was informed that they may submit questions to the trial court while deliberating. No questions were submitted to indicate the jury did not understand the meaning of "receive, retain, or dispose." We find that plain error is not present in this case.
 {¶ 33} Accordingly, Chambers' third assignment of error is overruled.
 {¶ 34} Chambers' fourth assignment of error states the following:
 {¶ 35} "The trial court erred in denying the appellant's motion for a mistrial where the State of Ohio failed to disclose the existence of exculpatory fingerprint evidence."
 {¶ 36} Chambers argues that the state engaged in misconduct when it failed to disclose to trial counsel that fingerprints were obtained in the instant matter and they excluded Chambers. Chambers argues that the trial court should have granted a mistrial.
 {¶ 37} The granting of a mistrial is necessary only when a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118, 127. A trial court's grant or denial of a motion for mistrial is reviewed under the abuse of discretion standard.State v. Conway, 108 Ohio St.3d 214, 244, 2006-Ohio-791.
 {¶ 38} The record reveals that the state indicated in its response to discovery that there was fingerprint evidence; therefore, the defense should not have been surprised.
 {¶ 39} Chambers' counsel asked Officer Harris whether fingerprints were ever lifted from the stolen van. Officer Harris responded yes, but they were of no value. Upon further questioning, the officer explained that the fingerprints did not match any particular person.
 {¶ 40} Contrary to Chambers' argument, the fingerprint evidence did not exclude or exculpate Chambers. It simply revealed that his fingerprints were not found on or in the van. There are numerous reasons why one's fingerprints would not be found on or in the van.
 {¶ 41} We find that the trial court did not abuse its discretion when it denied Chambers' motion for mistrial. Accordingly, Chambers' fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Corrigan, J., concur.